T. L. STELLING v. WACHOVIA BANK & TRUST COMPANY.

(Filed 13 April, 1938.)

**1. Set-off and Counterclaim § 2—**

The statutory right of counterclaim and set-off does not authorize a bank to apply a deposit to a debt due the bank by the depositor.

**2. Set-off and Counterclaim § 1—Equitable set-off may not be asserted by party unless his conduct has been equitable.**

The equitable right of set-off and counterclaim may not be invoked by a party unless his conduct has been equitable, fair and aboveboard, since "he who comes into equity must come with clean hand," and misconduct which will bar the assertion of the right need not necessarily be fraudulent.

**3. Same—Conduct of defendant held to preclude it from asserting equitable right of set-off.**

Plaintiff purchased a lot in a subdivision in reliance upon promissory representations as to improvements to be made therein within a year. The promoters failed to make the improvements as promised, and later transferred the capital stock of the corporation and the purchase money notes of the several purchasers to an individual. Suit by some of the purchasers of lots to set aside this transfer for fraud was settled by the appointment of defendant bank as trustee to collect the notes, pay off certain obligations, and to undertake to make the improvements. Before completing the improvements defendant terminated the trust, and retained certain purchase money notes in the sum of several hundred thousand dollars as collateral security for advancements made by it. It obtained judgment for the advancements, sold the collateral notes, including plaintiff's notes, and purchased same at the sale for $10,000. Plaintiff repeatedly repudiated and refused to pay the notes executed by him. Thereafter plaintiff started making deposits in a savings account in defendant bank, and the bank instructed its employees not to permit withdrawals therefrom, and when plaintiff attempted to withdraw funds informed plaintiff for the first time of its intention to apply same to the payment of plaintiff's notes. *Held:* Defendant bank made the advancements on the notes with full knowledge of the facts, and failed to inform plaintiff when the savings deposits were made that it intended to apply same to plaintiff's notes, and defendant may not assert the equitable right of set-off in plaintiff's action for the wrongful conversion of his savings account.

**4. Bills and Notes § 24—Judgment for holder upon admissions in the pleadings held error when answer alleges affirmative defenses.**

It is error for the court to render judgment in favor of the holder upon defendant's admission of the execution of the notes and nonpayment when the pleadings raise the defenses of breach of the contract for which the notes were given and partial failure of consideration, the availability of these defenses as against the holder being dependent upon the jury's finding as to whether he is a holder in due course.

**5. Bills and Notes § 22—Pleadings held to raise defenses of breach of contract for which notes were given and failure of consideration.**

Defendant in this action for a money recovery set up certain notes executed by plaintiff, and demanded judgment for the balance due on the notes after credits. Plaintiff admitted the execution of the notes and nonpayment, but alleged that the notes represented the balance due on the purchase price of a certain lot which he had bought in reliance upon promissory representations as to improvements to be made in the subdivision, that the improvements had not been made, and that defendant holder took the notes with knowledge of all the facts. *Held:* The pleadings raise the defenses of breach of contract for which the notes were given and failure of consideration, in whole or in part, and plaintiff is entitled to have both defenses submitted to the jury, the availability of the defenses as against the holder being dependent upon the jury's finding as to whether the defendant is a holder in due course.

**6. Set-off and Counterclaim § 2—**

The fact that a party is precluded from asserting the equitable remedy of set-off does not affect his statutory right of set-off.

**7. Fraud § 11—**

Evidence *held* insufficient to establish fraud in the procurement of the execution of notes for the balance of the purchase price of a lot in a real estate subdivision.

DEVIN, J., took no part in the consideration or decision of this case.

APPEAL by plaintiff from *Johnston, J.,* at December Civil Term, 1937, of BUNCOMBE. Reversed.

This is an action instituted by the plaintiff to recover damages for the wrongful confiscation and appropriation to its own use by the defendant of a deposit of the plaintiff in the defendant's banking institution at Asheville, N. C., in the total sum of $250.00. The defendant admits that it appropriated said deposit account and alleges that it had a right to do so for the purpose of applying same as a credit upon notes of the plaintiff then held by the defendant bank. The defendant also sets up a counterclaim to recover the balance due on said notes.

In 1925 William I. Phillips Company subdivided a tract of land in a suburban area of Asheville, near Skyland, N. C., designated as Royal Pines. In connection therewith many promissory representations as to the future development and improvement of said subdivision were made verbally and by press publication. Among other things it was represented that the development would· be completed in one year along the most modern lines; that there would be fine administration buildings with stores and offices to be erected in Royal Pines business section; that there would be all modern conveniences without extra cost or future assessment; that there would be one mile of white-way in the park near the tea room; that there would be water, lights and telephone supplied to

every lot; that there would be long paved avenues seventy feet wide, and cement walks, electric lights, sewerage, and planted shrubbery; and that Royal Pines would be developed into the show place of America.    The plaintiff, relying upon said promissory representations, purchased a lot for the price of $600.00, paying $150.00 cash and giving his three notes in the sum of $150.00 each, secured by trust deed upon the premises. The promoters of said development never made the improvements promised, but within a year thereafter substantially abandoned any effort to develop the property.    Thereupon the plaintiff, having paid the first semiannual installment of interest, repudiated said notes and refused to make any further payment thereon.

The holders of the purchase money notes given for the purchase of lots in the development assigned the capital stock of the corporation and approximately $900,000 worth of said notes to L. B. Jackson for the sum of $250,000.    Certain of the purchasers of the lots thereupon instituted an action against W. I. Phillips Company and L. B. Jackson to avoid said transfer as a fraud upon the purchasers of said lots.    In settlement of said suit the defendant was appointed trustee to take charge of said purchase money notes, collect the same, pay certain fixed obligations, including approximately $200,000 due the Continental Mortgage Company, and to undertake to make the promised improvements.

The defendant made certain collections on said notes and disbursed the same in paying the stipulated amounts and making certain improvements upon the premises.    Before completing the improvements as stipulated in the original contract the defendant terminated said trust, retaining the notes as collateral security for amounts advanced to L. B. Jackson.

Judgment was secured by the defendant against L. B. Jackson and the collateral security was sold and purchased by the defendant for $10,000.    This collateral included the notes of the plaintiff.

The defendant made frequent demands upon the plaintiff for the payment of his notes and in each instance he positively and definitely refused to pay the same.

Thereafter, to wit, on 30 January, 1934, the plaintiff began to make deposits in the savings department of the defendant bank, receiving a passbook in evidence of said account, upon which, each time a deposit was made, the date and amount of said deposit was entered by the defendant.    The plaintiff continued to make deposits through 12 May, 1934, at which time, including the deposit made on that date, his balance was $250.00.

Shortly after the plaintiff made his first deposit the defendant "put a latch on" his account, thereby prohibiting any withdrawals therefrom. This was done without any notice to the plaintiff and was for the pur-

pose and with the intent on the part of the defendant to eventually appropriate said account to the payment of plaintiff's notes. Subsequently, in the month of May, the plaintiff presented his passbook to the defendant bank and sought to withdraw his deposit. The defendant refused to honor his check or draft thereon and declined to pay the plaintiff the amount due him, then, for the first time, informing the plaintiff that he could not withdraw any part of his deposit. Later, on 5 June, 1934, an officer of the defendant bank issued a debit slip against the account of the plaintiff in the sum of $250.00 and charged the same to plaintiff's account, thereby withdrawing the money represented thereby. Said amount was credited on plaintiff's notes.

At the conclusion of all the evidence the defendant renewed its motion for judgment as of nonsuit, first made at the conclusion of plaintiff's evidence. The motion was allowed and the plaintiff excepted. Thereupon the court entered judgment dismissing the plaintiff's cause of action and rendered judgment for the defendant against the plaintiff for the balance due on his notes after crediting the $250.00 deposited by plaintiff in the defendant bank. The plaintiff excepted and appealed.

*Frank Carter and H. Kenneth Lee for plaintiff, appellant.*
*Alfred S. Barnard for defendant, appellee.*

BARNHILL, J. While there is a statutory right of counterclaim and set-off in certain instances, the statutory provisions are not such as would authorize a bank to appropriate a deposit to the payment of a debt due the bank by the depositor. This is permitted under the principles of equity, to do justly between the parties. When, however, a party seeks to invoke an equitable remedy or to assert an equitable right, or to rely upon an equitable defense, his conduct must have been equitable, fair and aboveboard. It is a familiar and oft-quoted maxim of equity that "he who comes into equity must come with clean hand," or, as it is frequently expressed, "he who has not done equity, cannot have equity." A right cannot arise to anyone out of his own wrong and the misconduct need not necessarily be fraudulent.

The defendant knew that the promissory representations made to the plaintiff when he gave the purchase money notes described in the pleadings had not been complied with. It knew that the promoters had abandoned all effort to make such improvements and had assigned the notes to another party. It knew that there was litigation attacking this transfer on the grounds of fraud. It had accepted a transfer of the purchase money notes and the capital stock of W. I. Phillips Company as trustee to collect and pay off the indebtedness of W. I. Phillips Company and to make the promised improvements. It terminated the trust

at a time when it knew that the property had not been developed to the extent and in the manner promised. It advanced money upon the notes with knowledge of the conditions and at a sale of the collateral purchased notes of the par value of several hundred thousand dollars for $10,000. It was fully advised that the plaintiff had repudiated said notes and had consistently refused to make any payment thereon. With this knowledge it accepted deposits from the plaintiff, issued a passbook therefor, showing that the plaintiff had on deposit in its institution subject to withdrawal by him, the amounts therein noted. In the meantime it had put a latch on this account. In other words, it had issued an order to its employees directing them not to honor any check against this account, of which procedure it did not advise the plaintiff. So that, the account was kept open for deposits but closed for withdrawals so long as the plaintiff would make deposits in said account. This was done by the defendant for the purpose of finally appropriating the account to the payment of the notes it held against the plaintiff. It well knew that so soon as, or in the event that, it should advise the plaintiff that the amounts deposited by him could not be withdrawn he would cease to make deposits. It concealed the true facts in respect to the account from the plaintiff for the purpose of benefiting therefrom. The conduct of the defendant is not such as would appeal favorably to the conscience of a court of equity. In our opinion, the defendant is in no position to successfully assert the right recognized in equity to appropriate the account of the plaintiff to the payment of notes it holds signed by the plaintiff in this cause.

This cause has heretofore been before this Court, *Stelling v. Trust Co.,* 208 N. C., 838. It was there held that the complaint sufficiently alleged a cause of action. As heretofore stated, the evidence offered is amply sufficient to establish an unauthorized application of plaintiff's account to the payment of his alleged indebtedness to the defendant as alleged in the complaint, and the defendant by its conduct is now estopped from setting up the equitable defense relied upon by it. It follows that there was error in the judgment of nonsuit.

The court below rendered judgment against the plaintiff on his notes upon the admissions contained in the pleadings. It is true the plaintiff admits that he signed the notes and that he has paid no part thereof except the first semiannual installment of interest. He alleges, however, a breach of the contract of which the notes were a part, and even if it be conceded that he does not sufficiently allege or prove fraud, he has sufficiently alleged and offered evidence tending to show that there has been a breach of the contract by Phillips & Company, and at least a partial failure of consideration, to the full knowledge of the defendant at the time it acquired title to said notes. As to this, he has a right to

COUNCIL *v.* LAND BANK.

be heard and to submit his cause to a jury. His rights under these pleaded defenses, even if established, are dependent upon the findings of the jury on defendant's plea that it is a holder of the notes in due course.

Upon the admitted facts the plaintiff is entitled to judgment for the amount of his deposit, with interest from 5 June, 1934. He is likewise entitled to have a jury determine the validity of his defense to the notes set up in the counterclaim, both as to whether he is relieved from the payment thereof by the breach of the contract by the payees in said notes, and as to whether there has been a failure of consideration either in whole or in part. In this connection it is well to say that defendant's loss of its right in equity to apply plaintiff's account to the payment of the notes held by it does not affect its right of offset under the statute.

We are of the opinion that the evidence is not sufficient to establish actionable fraud in the procurement of the execution of said notes.

Reversed.

DEVIN, J., took no part in the consideration or decision of this case.