NO. COA13-685

NORTH CAROLINA COURT OF APPEALS

Filed:  1 April 2014

COURTNAY T. BRISSETT, AND HUSBAND,
LADWIN BRISSETT, AND BRISSETT
RENTAL PROPERTIES, LLC,
    Plaintiffs,

v.                                    Craven County
                                      No. 10 CVS 860

FIRST MOUNT VERNON INDUSTRIAL LOAN
ASSOCIATION, DALE E. DUNCAN AND
KATHLEEN NEARY AS TRUSTEES FOR
FIRST MOUNT VERNON INDUSTRIAL LOAN
ASSOCIATION, PRODEV XVI LLC, AND
JOHN F. GONZALES, JASON MATTHEW A.
GOLD, THE SHOAF LAW FIRM, P.A.,
JAMES BOSTIC, KIM RICHARDSON, AND
LABRADOR FINANCIAL SERVICES, INC.,
    Defendants.


        Appeal by plaintiffs from judgment filed 13 September 2012

by Judge Paul L. Jones in Craven County Superior Court.  Heard

in the Court of Appeals 20 November 2013.


        *Watsi M. Sutton, Attorney At Law, P.A., by Jacinta D. Jones
        and Watsi M. Sutton, for plaintiffs-appellants.*

        *Ward and Smith, P.A., by Ryal W. Tayloe and Allen N. Trask,
        III, for defendants-appellees.*


        McCULLOUGH, Judge.


        Courtnay T. Brissett ("C. Brissett"), Ladwin Brissett ("L.

Brissett") (together "plaintiffs"),   and   Brissett   Rental

Properties, LLC (the "rental company"), appeal from judgment filed 13 September 2012. For the following reasons, we find no error in part and reverse in part.

## I. Background

In late 2004 and early 2005, plaintiffs purchased a number of distressed residential properties in New Bern, North Carolina as rental properties. Thereafter, at the advice of a CPA, plaintiffs had an attorney set up the rental company to hold the properties.

In late 2005, plaintiffs decided to begin rehabilitating the properties and began looking for financing. After several unsuccessful attempts to obtain financing from banks, plaintiffs, with the assistance of defendants Kim Richardson and James Bostic of defendant Labrador Financial Services, entered a loan agreement with defendant First Mount Vernon Industrial Loan Association ("FMV") to acquire funds to rehabilitate six of the properties. Defendant Jason A. Gold, of defendant The Shoaf Law Firm, conducted the closing of the transactions on 9 January 2006. Plaintiffs had no relationship and did not communicate with FMV until after the closing.

As required by the closing instructions, plaintiffs signed documents at the closing deeding the six properties to ProDev

XVI, LLC ("ProDev"), an entity established for the sole purpose of facilitating the loan. C. Brissett also signed the ProDev Operating Agreement and ProDev Organizational Agreement, which established C. Brissett as the 40% member and manager of ProDev and John Gonzales, a board member of FMV, as the controlling 60% member of ProDev. These ProDev documents also provided that C. Brissett would be conveyed Gonzales' 60% interest in ProDev upon payoff of the loan. The purpose of FMV requiring the conveyance of the properties to ProDev as a condition precedent to making the loan was to ease the collection process upon default and to protect FMV's interests from bankruptcy.

Plaintiffs executed all documents at the closing without reading them and without asking any questions. As a result, plaintiffs were not aware of the nature of the transaction.

Plaintiffs did not come to understand the terms of the documents executed at the closing until they encountered problems while attempting to refinance one of the completed properties later in 2006, at which point plaintiffs learned ProDev owned the property. By that time, plaintiffs had received approximately $131,500 in loan disbursements from FMV to rehabilitate the properties. The loan went into default in early 2007 and no further disbursements were made. Furthermore,

upon default Gonzales exercised his right as the controlling member of ProDev to remove C. Brissett from her role as the managing member of ProDev.

On 7 June 2010, plaintiffs commenced this civil action with the filing of summonses, complaint, and notice of *lis pendens* in Craven County Superior Court. In the complaint, plaintiffs asserted numerous claims against the named defendants, including claims against FMV to quiet title, breach of contract and rescission, misrepresentation, *lis pendens*, unfair and deceptive trade practices, fraud in the inducement, constructive fraud, and civil conspiracy and conspiracy in facilitation of fraud.[1]

FMV and its trustees, defendants Dale E. Duncan and Kathleen Neary, filed an answer to plaintiffs' complaint on 10 August 2010. The answer included various affirmative defenses, a counterclaim for reformation of certain deeds to correct typographical and other mistakes, and crossclaims against ProDev, Gold, The Shoaf Law Firm, Bostic, Richardson, and

---

[1]The only claims to reach trial were those claims against FMV and its trustees. Upon motion and affidavit for entry of default, on 25 January 2011, the trial court entered default against ProDev, Bostic, Richardson, Labrador Financial Services, and The Shoaf Law Firm. Thereafter, following Gonzales' death and the substitution of Gonzales' Estate as allowed by the trial court's 12 October 2011 order, plaintiffs voluntarily dismissed their claims against Gonzales' Estate and Gold by notices filed 27 August 2012 and 4 September 2012, respectively.

Labrador Financial Services.  Plaintiffs replied on 6 October 2010.

FMV and its trustees later filed an amended answer, counterclaims, and cross-claims on 24 October 2011.  In addition to the original counterclaim for reformation of deeds, FMV and its trustees asserted counterclaims for guaranty, unjust enrichment, and an equitable lien or constructive trust. Plaintiffs replied on 25 April 2012.

On 4 September 2012, the case was called for trial in Craven County Superior Court, the Honorable Paul Jones, Judge presiding.  Prior to impaneling a jury, the court heard arguments on motions *in limine*.  In regard to FMV's and its trustees' motion to exclude all evidence of Virginia State Bar proceedings against Duncan and Gonzales, the trial court ordered the transcripts of the proceedings to be excluded.

The following morning, 5 September 2012, a final pretrial order with stipulations as to undisputed facts was filed and the jury trial began.

On 6 September 2012, prior to testimony resuming for a second day, FMV and its trustees informed the trial court that they would move for a directed verdict at the close of plaintiffs' evidence and submitted a trial brief for the court's

consideration. Thereafter, at the close of plaintiffs' evidence on 7 September 2012, FMV and its trustees moved for a directed verdict pursuant to N.C. Gen. Stat. § 1A-1, Rule 50. Following a weekend recess, on 10 September 2012, plaintiffs responded with a trial brief opposing the motion for a directed verdict and the trial court heard arguments on the matter. The trial court then granted the motion for a directed verdict as to the following claims for relief against various parties: (3) Misrepresentation, (5) Unfair and Deceptive Trade Practices, (9) Fraud in the Inducement, (10) Constructive Fraud, (11) Unfair and Deceptive Trade Practices, (12) Constructive Trust, (16) Constructive Fraud, and (17) Civil Conspiracy and Conspiracy in Facilitation of Fraud.

FMV put on only documentary evidence and subsequent to a charge conference, the trial court instructed the jury on the following six issues:

> (1) Did the deeds from [C. Brissett] and [L. Brissett] and [the rental company] to [ProDev] meet the requirements of the law for conveying valid title?
>
> (2) Was the consideration given to [C. Brissett] and [L. Brissett] and [the rental company] for executing the deeds from [C. Brissett] and [L. Brissett] and [the rental company] to [ProDev] grossly inadequate under the circumstances?

(3) Did the deed of trust from [C. Brissett] and [L. Brissett] and [the rental company] to [ProDev] meet the requirements of the law for creating a valid debt?

(4) Is [FMV] entitled to have a lien on the five properties?

(5) What is the amount of [FMV's] lien which does not include interest on said amount if any?

(6) Did [FMV] act with "unclean hands" in its conduct, or in the conduct of its agents, relating to the loan transaction of January 9, 2006?

After deliberating, the jury reached a unanimous decision on all issues except for issues two and six, to which the jury was deadlocked eleven to one. As to issues one and three, the jury determined the deeds did not meet the requirements of the law for conveying valid title or creating a valid debt. As to issues four and five, the jury determined FMV was entitled to a lien on the five properties in the amount of $131,500.

The case was held open until 12 September 2012 when the trial court considered post-trial arguments. At that time, FMV moved for a judgment notwithstanding the verdict ("JNOV") pursuant to N.C. Gen. Stat. § 1A-1, Rule 50(b)(1); essentially asking the court to decide the undecided issues as a matter of

law.  Plaintiffs responded with their own motions for a JNOV and a new trial.

At the conclusion of the arguments, the trial court denied plaintiffs' motions and granted FMV's motion, deciding issues two and six in favor of FMV.

On 13 September 2012, the trial court filed a judgment reforming the deed of trust so that FMV has a lien on the properties in the amount of $131,500 with a right to foreclose on the lien by power of sale.  The judgment further dismissed all claims by plaintiff against FMV and its trustees and ordered the *lis pendens* filed in the action to be of no further force and effect and to be canceled by the Craven County Clerk of Superior Court.

Plaintiffs filed notice of appeal from the 13 September 2012 judgment on 11 October 2012.

## II. Discussion

Plaintiffs raise the following five issues on appeal: whether the trial court erred by (1) granting FMV's motion to exclude the transcript of Gonzales' testimony during Virginia State Bar proceedings; (2) directing a verdict in favor of FMV on plaintiffs' fraud and misrepresentation claims; (3) directing a verdict in favor of FMV on plaintiffs' constructive fraud

claim; (4) denying plaintiffs the opportunity to present evidence of FMV's net worth, revenues, and similar past conduct; and (5) entering a judgment notwithstanding the verdict on the issue of unclean hands.

## 1. Exclusion of Evidence

Plaintiffs first argue the trial court erred in excluding the transcript of Gonzales' testimony in Virginia State Bar proceedings from the evidence admitted at trial.

"Admission of evidence is 'addressed to the sound discretion of the trial court and may be disturbed on appeal only where an abuse of such discretion is clearly shown.'" *Gibbs v. Mayo*, 162 N.C. App. 549, 561, 591 S.E.2d 905, 913 (2004) (quoting *Sloan v. Miller Building Corp.*, 128 N.C. App. 37, 45, 493 S.E.2d 460, 465 (1997)). An abuse of discretion warranting reversal results "'only upon a showing that [the trial court's decision] was so arbitrary that it could not have been the result of a reasoned decision.'" *Id*. (quoting *White v. White*, 312 N.C. 770, 777, 324 S.E.2d 829, 833 (1985)). "The burden is on the appellant to not only show error, but also to show that he was prejudiced and a different result would have likely ensued had the error not occurred." *Suarez v. Wotring*, 155 N.C. App. 20, 30, 573 S.E.2d 746, 752 (2002). Relevancy is

a question of law reviewed *de novo*. *State v. Kirby*, 206 N.C. App. 446, 456, 697 S.E.2d 496, 503 (2010). Evidence is relevant when it has a "tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." N.C. Gen. Stat. § 8C-1, Rule 401 (2013).

Apart from the present case, plaintiffs filed complaints against Duncan and Gonzales with the Virginia State Bar. In proceedings stemming from those complaints, Duncan and Gonzales testified before the Virginia State Bar about their involvement with FMV, ProDev, and the financing scheme giving rise to this case. At the conclusion of the proceedings, Duncan and Gonzales each had their license to practice law in Virginia revoked for a period of time.

Subsequent to the Virginia State Bar proceedings and Gonzales' death, FMV filed a motion *in limine* in this case "for an order precluding [p]laintiffs . . . from offering any testimony or other evidence, as well as referencing in any manner the proceedings in those Virginia State Bar proceedings entitled *Virginia State Bar v. John Francis Gonzales, Esquire*, Case No. CL 09003666 and *Virginia State Bar v. Dale E. Duncan*, Case No. 09003613[.]" Specifically concerning the transcripts

of the proceedings, FMV contended the transcripts were irrelevant, immaterial, and otherwise inadmissible as hearsay. In response, plaintiffs contended the transcripts were relevant, material, and admissible as an exception to the hearsay rule under N.C. Gen. Stat. § 8C-1, Rules 804(b)(1), (3), and (5).

FMV's motion came on for hearing on 4 September 2012. After initially reserving judgment, the trial court concluded that plaintiffs could cross-examine defendants regarding their unethical conduct but determined the transcripts were immaterial and inadmissible hearsay.

At the outset, we address the trial court's mistaken statement that the transcripts were immaterial. Although the memorandum orders containing the results and conclusions of the Virginia State Bar proceedings may be irrelevant and immaterial in the present case because the standards in ethical proceedings differ from those in legal proceedings, Gonzales' testimony in the Virginia State Bar proceedings, as recorded in the transcript, is both relevant and material in the present case as it details the conduct that forms the basis of plaintiffs' claims.

Nevertheless, relevant and material evidence may be excluded if it is hearsay. The North Carolina Rules of Evidence

provide that hearsay, "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted[,]" N.C. Gen. Stat. § 8C-1, Rule 801(c) (2013), "is not admissible except as provided by statute or by [the] rules." N.C. Gen. Stat. § 8C-1, Rule 802 (2013). There are exceptions to rule against hearsay, however, when a declarant is unavailable. *See* N.C. Gen. Stat. § 8C-1, Rule 804 (2013).

Now on appeal, plaintiffs argue the trial court erred in excluding the transcript of Gonzales' testimony without issuing specific findings of fact and conclusions of law regarding the admissibility of the transcript under N.C. Gen. Stat. § 8C-1, Rules 804(b)(3) and (5). In support of their argument, plaintiffs cite *State v. Smith*, 315 N.C. 76, 337 S.E.2d 833 (1985), and *State v. Triplett*, 316 N.C. 1, 340 S.E.2d 736 (1986).

In *Smith*, our Supreme Court addressed the admissibility of hearsay under N.C. Gen. Stat. § 8C-1, Rule 803(24), the residual exception for hearsay when the availability of a declarant is immaterial. *Smith*, 315 N.C. at 90-99, 337 S.E.2d at 843-48. In its discussion, the Court stated,

> [u]pon being notified that the proponent is seeking to admit the statement pursuant to

that exception, the trial judge must have the record reflect that he is considering the admissibility of the statement pursuant to Rule 803(24). Only then should the trial judge proceed to analyze the admissibility by undertaking the six-part inquiry required of him by the rule. The trial judge must engage in this inquiry prior to admitting or denying proffered hearsay evidence pursuant to Rule 803(24).

*Id*. at 92, 337 S.E.2d at 844. Upon outlining the six-part inquiry, the Court in *Smith* then held that,

before allowing the admission of hearsay evidence to be presented under Rule 803(24) (other exceptions), the trial judge must enter appropriate statements, rationale, or findings of fact and conclusions of law, as set forth herein, in the record to support his discretionary decision that such evidence is admissible under that rule. If the record does not comply with these requirements and it is clear that the evidence was admitted pursuant to Rule 803(24), its admission must be held to be error.

*Id*. at 97, 337 S.E.2d at 847. Thereafter, our Supreme Court adopted "parallel guidelines" for the admission of hearsay under N.C. Gen. Stat. § 8C-1, Rule 804(b)(5) in *Triplett*, noting "Rule 804(b)(5) and Rule 803(24) are substantively nearly identical[.]" *Triplett*, 316 N.C. at 7, 340 S.E.2d at 740.

Under either of the two residual exceptions to the hearsay rule, the trial court must determine the following: (1) whether proper notice has been given, (2) whether the hearsay is not specifically covered elsewhere, (3) whether the statement is

> trustworthy, (4) whether the statement is material, (5) whether the statement is more probative on the issue than any other evidence which the proponent can procure through reasonable efforts, and (6) whether the interests of justice will be best served by admission.

*State v. Valentine*, 357 N.C. 512, 518, 591 S.E.2d 846, 852 (2003).

Under the law espoused in *Smith and Triplett*, the trial court is only required to issue findings of fact and conclusions of law to support a decision to admit evidence pursuant to N.C. Gen. Stat. § 8C-1, Rule 804(b)(5). There is no requirement that the trial court issue findings of fact or conclusions of law regarding the admissibility of evidence pursuant to any other N.C. Gen. Stat. § 8C-1, Rule 804 exception. Furthermore, the trial court did not admit the hearsay evidence at issue in the present case. As this Court has stated, "[t]he six-part inquiry is very useful when an appellate court reviews the admission of hearsay under Rule 804(b)(5) or 803(24). However, its utility is diminished when an appellate court reviews the exclusion of hearsay." *Phillips & Jordan Inv. Corp. v. Ashblue Co.*, 86 N.C. App. 186, 191, 357 S.E.2d 1, 3-4 (1987).

Nevertheless, *Smith* and *Triplett* require the trial court, upon being notified that a party is seeking to admit evidence pursuant to a residual hearsay exception, to ensure the record

reflects it is considering the exception and engage in the six-part inquiry "prior to admitting or denying proffered hearsay evidence[.]" *Smith*, 315 N.C. at 92, 337 S.E.2d at 844.

Although plaintiffs argued for admission of the transcript of Gonzales' testimony under the residual exception in both its memorandum and argument, the trial court gave no indication that it considered admission under N.C. Gen. Stat. § 8C-1, Rule 804(b)(5) or engaged in the required six-part inquiry when the trial court denied the admission of the transcript. We hold this failure to address the admission of the evidence under N.C. Gen. Stat. § 8C-1, Rule 804(b)(5) was arbitrary and an abuse of discretion. Moreover, given that Gonzales is now deceased, plaintiffs provided notice of their intent to admit the transcript, the trial court denied admission of the transcript after plaintiffs argued for its admission under the only other applicable hearsay exceptions, the Virginia Bar proceedings have sufficient circumstantial guarantees of trustworthiness, Gonzales' testimony was material, and Gonzales was the best source of evidence regarding his role with FMV and ProDev, we believe the transcript of Gonzales' testimony would likely be admitted under N.C. Gen. Stat. § 8C-1, Rule 804(b)(5) if properly considered.

In addition to determining the trial court erred, we hold plaintiffs were prejudiced by the error. Although directed verdicts were entered on plaintiffs' fraud, misrepresentation, and constructive fraud claims, and some evidence of Gonzales' role with FMV and ProDev was introduced through stipulations and testimony from FMV president, Arthur Bennett, we find the exclusion of the transcript of Gonzales' testimony was not harmless where Gonzales' testimony is significant to the issue of unclean hands, on which the jury was deadlocked at trial.

## 2. and 3. Directed Verdicts

As mentioned in the background, at the close of plaintiffs' evidence, FMV and its trustees moved for a directed verdict on all issues pursuant to N.C. Gen. Stat. § 1A-1, Rule 50. Upon consideration of the trial briefs and arguments by both sides, the trial court granted FMV's motion for a directed verdict on plaintiffs' claims of fraud, misrepresentation, and constructive fraud, among others.

Now, in plaintiffs' second and third issues on appeal, plaintiffs argue the trial court erred in directing verdicts in favor of FMV on the fraud, misrepresentation, and constructive fraud claims. "The standard of review of directed verdict is whether the evidence, taken in the light most favorable to the

non-moving party, is sufficient as a matter of law to be submitted to the jury."  *Davis v. Dennis Lilly Co.*, 330 N.C. 314, 322, 411 S.E.2d 133, 138 (1991) (citing *Kelly v. Int'l Harvester Co.*, 278 N.C. 153, 179 S.E.2d 396 (1971)).  Thus, our review is *de novo*.  *See Maxwell v. Michael P. Doyle, Inc.*, 164 N.C. App. 319, 323, 595 S.E.2d 759, 761 (2004) ("Because the trial court's ruling on a motion for a directed verdict addressing the sufficiency of the evidence presents a question of law, it is reviewed *de novo*.").

## Fraud and Misrepresentation

Regarding plaintiffs' fraud and misrepresentation claims, plaintiffs contend the trial court erred in directing a verdict in favor of FMV because there was sufficient evidence for the jury to infer that the statute of limitations had not run.  We disagree.

N.C. Gen. Stat. § 1-52(9) provides that actions for "relief on the ground of fraud or mistake" must be brought within three years.  N.C. Gen. Stat. § 1-52(9)(2013).  Yet, "the cause of action shall not be deemed to have accrued until the discovery by the aggrieved party of the facts constituting the fraud or mistake."  *Id*.  Our Supreme Court has "previously construed this provision to 'set accrual at the time of discovery *regardless* of

the length of time between the fraudulent act or mistake and plaintiff's discovery of it.'" *Forbis v. Neal*, 361 N.C. 519, 524, 649 S.E.2d 382, 386 (2007) (quoting *Feibus & Co. v. Godley Constr. Co.*, 301 N.C. 294, 304, 271 S.E.2d 385, 392 (1980)). "For purposes of N.C.G.S. § 1-52(9), 'discovery' means either actual discovery or when the fraud should have been discovered in the exercise of 'reasonable diligence under the circumstances.'" *Id.* (quoting *Bennett v. Anson Bank & Trust Co.*, 265 N.C. 148, 154, 143 S.E.2d 312, 317 (1965)).

As noted above, plaintiffs argue there was sufficient evidence from which the jury could infer the statute of limitations had not expired prior to 7 June 2010, the date plaintiffs commenced this action. In support of their argument, plaintiffs quote *Huss v. Huss,* 31 N.C. App. 463, 468, 230 S.E.2d 159, 163 (1976), for the proposition that "[w]hether the plaintiff in the exercise of due diligence should have discovered the facts [regarding the existence of potential fraud] more than three years prior to the institution of the action is ordinarily for the jury when the evidence is not conclusive or conflicting." *Id.* at 468, 230 S.E.2d at 163.

Plaintiffs' argument lacks merit. Considering the evidence in this case, we find no issues for the jury to determine.

Both at trial and in their brief on appeal, plaintiffs acknowledge that they began to become suspicious about the loan when they were unable to refinance one of the properties in August or September of 2006. As L. Brissett testified, it was around this time that they learned of Gonzales' role in the transaction. L. Brissett further testified that he could not locate his copy of the closing documents and demanded Gold send him copies. Upon receipt of the copies of the closing documents in October 2006, plaintiffs noticed some of C. Brissett's signatures did not look like her own. C. Brissett subsequently documented plaintiffs' realization that they were being defrauded in a 29 December 2006 letter.

We find this evidence conclusive that plaintiffs were aware of the fraud in 2006. Therefore, the three-year statute of limitations began to run in 2006 and expired prior to the commencement of this action on 7 June 2010.

Despite evidence the fraud was discovered in 2006, plaintiffs argue that "[a]lthough [they] may have suspected that [FMV] was involved with the transfer of their properties to [ProDev], and even potentially involved with the forgery of [C. Brissett's] signature on several documents, the plaintiffs did not reasonably discover [FMV's] actual ties to the fraudulent

scheme until 2007 or 2008." We are not convinced; discovery includes "when the fraud should have been discovered in the exercise of reasonable diligence under the circumstances." *Forbis*, 361 N.C. at 524, 649 S.E.2d at 386 (quotation marks omitted).[2]

### Constructive Fraud

Regarding plaintiffs' constructive fraud claim, plaintiffs argue the trial court erred in directing a verdict in favor of FMV because there was sufficient evidence to establish a presumption of a breach of fiduciary duty where FMV required plaintiffs to convey title to the properties to ProDev, a company controlled by Gonzales and formed for the sole purpose of holding title to the properties. We disagree.

"In order to maintain a claim for constructive fraud, plaintiffs must show that they and defendants were in a 'relation of trust and confidence . . . [which] led up to and surrounded the consummation of the transaction in which defendant is alleged to have taken advantage of his position of

---

[2]Although plaintiffs do not mention it on appeal, we note that FMV also argued for a directed verdict on the fraud and misrepresentation claims on the ground that essential elements of those claims were missing. The trial court, however, did not explain the basis for its ruling. Because we find the directed verdict was proper because the statute of limitations had expired, we do not address the elements of the fraud and misrepresentation claims.

trust to the hurt of plaintiff.'" *Barger v. McCoy Hillard & Parks*, 346 N.C. 650, 666, 488 S.E.2d 215, 224 (1997) (quoting *Rhodes v. Jones*, 232 N.C. 547, 549, 61 S.E.2d 725, 726 (1950)). "Put simply, a plaintiff must show (1) the existence of a fiduciary duty, and (2) a breach of that duty." *Keener Lumber Co., Inc. v. Perry*, 149 N.C. App. 19, 28, 560 S.E.2d 817, 823 (2002).

As this Court has recently explained,

> [a] fiduciary relationship "may exist under a variety of circumstances; it exists in all cases where there has been a special confidence reposed in one who in equity and good conscience is bound to act in good faith and with due regard to the interests of the one reposing confidence." *Abbitt v. Gregory*, 201 N.C. 577, 598, 160 S.E. 896, 906 (1931). Beyond the usual occurrence, such as that found between a lawyer and client, the relationship "extends to any possible case in which a fiduciary relation exists in fact, and in which there is confidence reposed on one side, and resulting domination and influence on the other." *Id*. (citation omitted) (internal quotation marks omitted).

*Dallaire v. Bank of America, N.A.*, _ N.C. App. _, _, 738 S.E.2d 731, 735 (2012). This Court, however, has acknowledged that an ordinary debtor-creditor relationship does not generally give rise to a fiduciary relationship. *Branch Banking and Trust Co. v. Thompson*, 107 N.C. App. 53, 61, 418 S.E.2d 694, 699 (1992).

Although plaintiffs admit that an ordinary creditor-debtor relationship does not create fiduciary duties, plaintiffs contend a fiduciary relationship exists between a mortgagee and mortgagor when the mortgagee uses a "straw man" to divest the mortgagor of his equity of redemption. In support of their argument, plaintiffs cite *Hinton v. West*, 207 N.C. 708, 178 S.E. 356 (1935).

The defendant in *Hinton*, in exchange for various items of value, made out a note and took a mortgage on 48 acres of land owned by the plaintiff. *Id*. at 709, 178 S.E. at 356. Upon default and a looming threat of foreclosure, the plaintiff, at the insistence of the defendant, relinquished his equity of redemption by conveying 42 acres of the land by deed to the defendant, as trustee for defendant's brother, to satisfy the debt and avoid foreclosure. *Id*. at 710, 178 S.E. at 357. Yet, following the transfer, defendant took control and made improvements on the acreage. *Id*. In reviewing the transaction, our Supreme Court noted that the [defendant] was the only party with whom the [plaintiff] dealt and was acting in a "dual capacity as trustee and agent for [his brother], and was the primary party to the purchase." *Id*. at 714, 178 S.E. at 359. The Court then reversed the trial court's judgment of a nonsuit

holding, that where the defendant, as trustee, acted for himself to acquire the plaintiff's equity of redemption for inadequate consideration, "there was sufficient evidence to be submitted to a jury, and a presumption arose from the evidence, if believed by them, which would require the defendant[] to show that the transaction was fair and free from oppression." *Id*.

Plaintiffs argue the same result is warranted in the present case because FMV, through Gonzales, stood on both sides of the transaction and failed to disclose Gonzales' affiliation with FMV. We disagree and find the present case distinguishable.

Although the result of plaintiffs' default, where Gonzales takes control of ProDev and the subject properties to the benefit of FMV, is similar to a foreclosure under a deed of trust, the relationship between plaintiffs and FMV is not a mortgagor-mortgagee relationship. As stipulated by the parties, "[n]one of the [p]roperties [were] the personal residence of the [plaintiffs] on the date of closing, and the loan was in all respects a commercial loan for the [plaintiffs] to use [to] rehabilitate the [p]roperties." Moreover, there was no prior relationship between FMV and plaintiffs to establish a fiduciary relationship. In fact, it was stipulated that "[FMV] had no

contact or communication with the [plaintiffs] until after the loan was closed." Based on these facts, we distinguish this case from *Hinton* and the cases where fiduciary duties have been imposed based on the special relationships between debtors and creditors and hold there was no fiduciary duty owed to plaintiffs by FMV. Thus, the trial court did not err in entering a directed verdict on plaintiffs' constructive fraud claim.

### 4. Evidence for Punitive Damages

In the fourth issue raised by plaintiffs on appeal, plaintiffs argue the trial court erred in denying them the opportunity to present evidence to the jury of FMV's net worth, revenues, and similar past conduct. Plaintiffs contend this evidence was admissible to prove punitive damages pursuant to N.C. Gen. Stat. §§ 1D-15 and 1D-35.

N.C. Gen. Stat. § 1D-15 provides "[p]unitive damages may be awarded only if the claimant proves that the defendant is liable for compensatory damages and that one of the following aggravating factors was present and was related to the injury for which compensatory damages were awarded: (1) Fraud. (2) Malice. (3) Willful or wanton conduct." N.C. Gen. Stat. § 1D-15(a) (2013). N.C. Gen. Stat. § 1D-35 then lists the types of

evidence that the trier of fact may consider in determining the amount of punitive damages, if any, to be awarded. N.C. Gen. Stat. § 1D-35 (2013). The list of evidence includes evidence related to "[t]he existence and frequency of any similar past conduct by the defendant[,]" N.C. Gen. Stat. § 1D-35(2)(g), and "[t]he defendant's ability to pay punitive damages, as evidenced by its revenues or net worth." N.C. Gen. Stat. § 1D-35(2)(i).

At the outset of our analysis on the issue, we note that plaintiffs mischaracterize the portions of the evidence they claim were excluded in error. Regarding FMV's ability to pay punitive damages, plaintiffs questioned Bennett regarding the total value of the loans by FMV in North Carolina in 2006. FMV objected on relevance grounds and the trial court sustained the objection. The trial court, however, allowed plaintiff to question Bennett as to the largest and smallest amount of loans, in terms of value, made by FMV in any year since Bennett became president. Regarding FMV's past similar conduct, plaintiffs did not merely inquire into FMV's past similar conduct, but instead questioned Bennett about the number of times FMV had been sued as a result of similar lending schemes. FMV objected and the trial court sustained the objection. Upon review of the

testimony, we hold the trial court did not abuse its discretion in sustaining either of FMV's objections.

Nevertheless, assuming arguendo the trial court erred in limiting the testimony, the error was harmless given that directed verdicts were entered in favor of FMV on the fraud claims and the jury never found FMV liable, thereby precluding any contemplation of damages. *See* N.C. Gen. Stat. § 1D-15(a) (conditioning the award of punitive damages on the award of compensatory damages).

## 5. Judgment Notwithstanding the Verdict ("JNOV")

As detailed in the background, the jury was deadlocked on the issues of adequate consideration and unclean hands. As a result, on 12 September 2012, FMV filed a motion for a JNOV pursuant to N.C. Gen. Stat. § 1A-1, Rule 50(b)(1). In the motion, FMV argued it was entitled to judgment as a matter of law because there was overwhelming evidence that plaintiffs received consideration for executing the deeds conveying title to ProDev, as shown by the jury's determination that FMV is entitled to a lien on the properties, and "the [trial court,] having concluded that [FMV] was entitled to [d]irected verdict[s] on [p]laintiffs' claims for fraud, civil conspiracy, constructive fraud, and unfair or deceptive trade practices, . . .

. essentially ruled that [FMV] did not act with 'unclean hands.'" On the same day, plaintiffs filed their own motion for a JNOV and a new trial arguing there was overwhelming evidence of inadequate consideration and unclean hands. In response to FMV's argument regarding unclean hands, plaintiffs argued "[t]he elements in each of [the fraud] claims are not identical to what the [c]ourt must find to determine the issue of . . . 'unclean hands[]'" and, therefore, the directed verdicts did not foreclose a determination of unclean hands.

After hearing arguments echoing those in the motions, the trial court granted FMV's motion for a JNOV and denied plaintiffs' motions.

In the plaintiffs' final issue on appeal, plaintiffs argue the trial court erred in granting FMV's motion for a JNOV on the issue of unclean hands.[3] We agree.

"A motion for judgment notwithstanding the verdict (JNOV) 'is essentially a directed verdict granted after the jury verdict.'" *Tomika Invs., Inc. v. Macedonia True Vine Pentecostal Holiness Church of God, Inc.*, 136 N.C. App. 493,

---

[3]Plaintiffs do not challenge the JNOV in favor of FMV on the issue of adequate consideration because the issue is of little consequence following the jury's determination that the deeds were inadequate under the law to convey valid title and create a valid debt.

498, 524 S.E.2d 591, 595 (2000). Thus, "[o]n appeal the standard of review for a JNOV is the same as that for a directed verdict, that is whether the evidence was sufficient to go to the jury." *Id*. at 498-99, 524 S.E.2d at 595.

"The doctrine of clean hands is an equitable defense which prevents recovery where the party seeking relief comes into court with unclean hands." *Ray v. Norris*, 78 N.C. App. 379, 384, 337 S.E.2d 137, 141 (1985). More specifically, this Court has stated "[t]he clean hands doctrine denies equitable relief only to litigants who have acted in bad faith, or whose conduct has been dishonest, deceitful, fraudulent, unfair, or overreaching in regard to the transaction in controversy." *Collins v. Davis*, 68 N.C. App. 588, 592, 315 S.E.2d 759, 762, *affirmed*, 312 N.C. 324, 321 S.E.2d 892 (1984). In this case, a finding that FMV acted with unclean hands would prevent FMV from obtaining a lien on the subject properties.

In entering the JNOV on the issue of unclean hands, it appears the trial court agreed with FMV's argument that the trial court had already decided the issue when it directed verdicts on plaintiffs' claims for fraud, civil conspiracy, constructive fraud, and unfair or deceptive trade practices. We find this was error for two reasons. First, FMV argued for a

directed verdict on the fraud claims based on the statute of limitations and lack of reasonable reliance. It is unclear from the record on which basis the trial court entered the directed verdicts. Second, for a finding of unclean hands, "[t]he inequitable action need not rise to the level of fraud[.]" *S.T. Wooten Corp. v. Front Street Const., LLC*, _ N.C. App. _, _, 719 S.E.2d 249, 252 (2011) (citing *Stelling v. Wachovia Bank and Trust Co.*, 213 N.C. 324, 327, 197 S.E. 754, 756 (1938)). Thus, fraud is not required to preclude equitable relief on the basis of unclean hands.

Upon review of the evidence, even without considering the transcript of Gonzales' testimony in the Virginia State Bar proceedings, we hold there was sufficient evidence to present the jury with the issue of whether FMV acted with unclean hands. As a result, we hold the trial court erred in granting FMV's motion for a JNOV following the jury's impasse.

### III. Conclusion

Based on the forgoing discussion, we hold the trial court did not err in directing verdicts on plaintiffs' fraud, misrepresentation, and constructive fraud claims. Nor did the trial court improperly exclude evidence relating to punitive damages. The trial court did, however, err in failing to

consider the admission of the transcript of Gonzales' testimony in the Virginia State Bar proceedings under all the hearsay exceptions argued by plaintiffs and by granting FMV's motion for a JNOV on the issue of unclean hands.  Therefore, the judgment is reversed and the case is remanded on the issue of unclean hands.

No error in part and reversed in part.

Judges ELMORE and DAVIS concur.