DILLON, Judge.
*25 Jonathan Harris ("Father") appeals from the trial court's judgment finding each of his four children neglected, and finding his two daughters to be abused. Father argues the trial court erred and abused its discretion by *619 allowing his daughters' many out-of-court statements into evidence under the residual exception to the hearsay rule. Father also argues the trial court erred and abused its discretion by ceasing visitation between Father and his sons. We affirm.
I. Background
This case arises from a long timeline of reported abuse. The evidence at the adjudication hearing tended to show as follows:
Father and his wife ("Mother") married in July 2002 and separated in March 2011. Four children were born from the marriage, W.H. ("Weston"), J.H. ("Jeremy"), J.L.H. ("Julia"), and J.E.H. ("Jasmine").[1]
In December 2011, Mother reported to the Department of Social Services ("DSS") that Jasmine had been sexually abused by Father in his home. Jasmine told Mother that Father put his penis in her mouth on two occasions. The next day Jasmine was interviewed by a DSS social worker in Mother's home. Jasmine repeated the statement to the social worker.
Early the next month, on 4 January 2012, Jasmine completed a forensic evaluation at the TEDI Bear Children's Advocacy Center in Greenville. Jasmine did not disclose sexual abuse, and the medical exam uncovered no physical evidence of any type of sexual contact. The TEDI
*26 Bear report provided that "recantation is not uncommon in cases of child sexual abuse" and concluded that Jasmine's allegations merited further investigations.
A few weeks later, on 20 January 2012, the DSS social worker revisited Mother's home and asked Jasmine if there was anything else Jasmine wanted to tell her. Jasmine drew pictures suggesting a child having oral contact with a man's genitals. Jasmine told the social worker that she was the child in the pictures and Father was the man.
About three and a half years later, in August 2015, the 2012 allegations resurfaced. Julia, Father's younger daughter, told Jasmine that Father had made inappropriate sexual contact with her. Julia then told Mother, and DSS reopened its investigation. Another social worker interviewed both Jasmine and Julia. Both daughters described inappropriate sexual contact and touching of their private parts by Father. On 31 August 2015, Julia described the inappropriate sexual contact to the TEDI Bear Clinic.
In January 2016, DSS filed petitions alleging that Father's minor children, Weston, Jeremy, Jasmine, and Julia, were neglected, and that Jasmine and Julia were abused. In early 2016, the Pitt County Sheriff's Department interviewed Jasmine and Julia separately. Both girls stated Father had done something they "didn't like," but did not provide further details.
At a preliminary hearing, the trial court determined that the girls were unavailable to testify. The trial court found that the girls were motivated to speak the truth while making prior out-of-court statements, that their recent out-of-court statements to the interviewers at the TEDI Bear Clinic, DSS social workers, and police detectives all possessed circumstantial guarantees of trustworthiness, and admitted the statements pursuant to the residual exception to the hearsay rule. The trial court ultimately adjudicated Jasmine and Julia sexually and emotionally abused, and adjudicated all four children neglected.
Father timely appeals.
II. Analysis
Father makes a number of arguments on appeal, which we address in turn.
A. Residual Exception to Hearsay
Father argues that the trial court erred in allowing his daughters' many out-of-court statements regarding his alleged sexual abuse of *27 them into evidence. Specifically, Father contends that the State failed to provide sufficient notice of the particulars of the statements, as required by Rule 803(24) of the North Carolina Rules of Evidence. Father also contends the trial court failed to consider other factors approved by our Supreme Court in concluding that the statements *620 possessed circumstantial guarantees of trustworthiness, including the daughters' recantation, the factors affecting the daughters' motivation to tell the truth, and the reason for the daughters' unavailability to testify. We disagree.
The admission of evidence pursuant to the residual exception to hearsay is reviewed for an abuse of discretion, "and may be disturbed on appeal only where an abuse of such discretion is clearly shown." Brissett v. Mount Vernon Undus. Loan Ass'n ., 233 N.C. App. 241, 246, 756 S.E.2d 798, 803 (2014). The appellant must show that "[he or she] was prejudiced and a different result would have likely ensued had the error not occurred." Id.
When employing Rule 803(24), our Supreme Court has interpreted the residual exception to require the trial court to determine whether (1) proper notice has been given; (2) the hearsay statement is not specifically covered elsewhere; (3) the statement possesses circumstantial guarantees of trustworthiness; (4) the statement is material; (5) the statement is more probative than any other evidence which the proponent can procure through reasonable efforts; and (6) the interest of justice will be best served by admission. See State v. Smith , 315 N.C. 76, 92-96, 337 S.E.2d 833, 844-46 (1985) ; N.C. R. Civ. P. § 8C, Rule 803(24).
Father challenges the trial court's decision on several grounds. First, Father argues that the trial court erred in determining that DSS provided proper notice of its intention to offer the daughters' statements and their particulars sufficiently in advance to provide Father with a fair opportunity to prepare for the hearing. Our Supreme Court has instructed that the notice requirement is flexible and that notice is sufficient so long as it gives the opposing party "fair opportunity to meet the proffered evidence." State v. Triplett , 316 N.C. 1, 12-13, 340 S.E.2d 736, 743 (1986).
In this case, DSS sent written notice to Father of its intent to use the out-of-court statements made by his daughters to TEDI Bear, the Pitt County Sherriff's Office, North Hampton County DSS, and Pitt County DSS. DSS sent this written notice between one week and seven months before the statements were introduced at the varying hearings and trial that followed. And these statements had been previously provided to Father many months before DSS sent its written notice. We have reviewed the case law on point and the record in this case and hold *28 that the trial court did not err in determining that the State provided sufficient notice to afford Father a fair opportunity to prepare, in compliance with Rule 803(24).
Father next argues the trial court erred in determining that his daughters' out-of-court statements were trustworthy because the trial court failed to consider that his daughters had recanted their accusations during their 2012 TEDI Bear interviews. Our Supreme Court has often used the following factors in determining a statement's trustworthiness: (1) the declarant's personal knowledge of the underlying event; (2) the declarant's motivation to speak the truth or otherwise; (3) whether the declarant ever recanted the testimony; and (4) the practical availability of the declarant at trial for meaningful cross-examination. State v. Valentine , 357 N.C. 512, 518, 591 S.E.2d 846, 852-53 (2003) ; Smith, 315 N.C. at 93-94, 337 S.E.2d at 845. We note that any recantation of testimony is a factor. However, our Supreme Court has also instructed that "[n]one of these [four] factors, alone or in combination, may conclusively establish or discount the statement's 'circumstantial guarantees of trustworthiness.' " Id .
Here, the trial court made a number of findings regarding the numerous out-of-court statements made by Jasmine and Julia concerning their Father's abuse. It is true that the trial court made no mention of the daughters' 2012 TEDI Bear interview. Our Supreme Court, though, has held that the failure of a trial court to make findings in this regard is not fatal. Valentine , 357 N.C. at 519, 591 S.E.2d at 853. We have reviewed the trial court's findings and the record, and we conclude that the trial court did not abuse its discretion in determining that the out-of-court statements were trustworthy.
*621 Finally, Father argues that the trial court erred in determining that his daughters were unavailable to testify at trial. The trial court made this determination based on its findings that the out-of-court statements were trustworthy, that testifying would traumatize the daughters, that testifying would cause them confusion, and that there would be a risk that they would not be truthful out of guilt and fear. Specifically, Father contends that it was improper and inconsistent for the trial court to find that all of the out-of-court statements possessed sufficient circumstantial guarantees of trustworthiness, but that the daughters' confusion and anxiety might compromise the truthfulness of their testimony in court. Father relies on State v. Stutts , in which we held that "finding a witness unavailable to testify because of an inability to tell truth from fantasy prevents that witness' out-of-court statements from possessing *29 guarantees of trustworthiness ... under the residual exception[.]" State v. Stutts , 105 N.C. App. 557, 563, 414 S.E.2d 61, 64-65 (1992).
However, in Stutts , the trial court determined that a juvenile was unavailable because she had an inability to discern truth from falsehood. On appeal, our Court held that the trial court's reasoning also led to a conclusion that any statement made by the juvenile-even her out-of-court statements-were untrustworthy, since she could not tell truth from fantasy. Id. In the present case, the trial court did not reason that the daughters could not tell truth from fantasy, but rather that they would more likely be intentionally untruthful out of guilt and fear. See State v. Holden , 106 N.C. App. 244, 251-52, 416 S.E.2d 415, 420 (1992) (distinguishing Stutts , holding that trial court did not err based on finding that witness was unavailable due to "fear and trepidation").
B. Suspension of Visitation Rights
Father argues it was error for the trial court to consider the girls' best interest in lieu of the boys' best interest in determining whether Father could continue to visit with the boys. We disagree.
"This Court reviews the trial court's dispositional orders of visitation for an abuse of discretion." In re C.M ., 183 N.C. App. 207, 215, 644 S.E.2d 588, 595 (2007) ; N.C. Gen. Stat. §§ 7B-507 (2015). Section 7B-507 requires a child to be placed in the custody of DSS if returning the child to his or her home would be against the child's health and safety. N.C. Gen. Stat. §§ 7B-507.
The trial court here found that, because Father had been found to have sexually abused his daughters and his sons were adjudicated to have been neglected, further visitation with any of the children was against the children's best interests, health, and safety. Father's conduct toward his daughters directly influenced the trial court's determinations, but only insofar as it suggested that further contact could put the sons' safety at risk. We have reviewed the trial court's order and hold the trial court did not abuse its discretion in ceasing further visitation with Father.
AFFIRMED.
Judges DAVIS and INMAN concur.

Pseudonyms are used to protect the identity of the juveniles and for ease of reading. N.C. R. App. P. 3.1(b).