IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA19-1000

Filed: 17 November 2020

Onslow County, No. 18 JA 116-118

IN THE MATTER OF:

B.W., T.W., L.W.

Appeal by respondent from order entered 13 June 2019 by Judge Sarah C. Seaton in Onslow County District Court. Heard in the Court of Appeals 3 November 2020.

> *Richard Penley for petitioner-appellee Onslow County Department of Social Services.*

> *David A. Perez for respondent-appellant mother.*

> *Guardian Ad Litem Division, N.C. Administrative Office of the Courts, by Michelle FormyDuval Lynch, for guardian ad litem.*

TYSON, Judge.

Respondent-mother appeals an order adjudicating her children, "Brian," and "Lydia," as abused and neglected juveniles and her child, "Timothy," as a neglected juvenile. The parties have stipulated to pseudonyms for the minor children pursuant to N.C.R. App. P. 42(b). We vacate in part, reverse in part, and remand.

I. Background

The Onslow County Department of Social Services ("DSS") received a report on 30 April 2018 that Respondent-mother and her family were living in a shed with multiple cats, with cat feces and roaches present inside the shed. Respondent-mother agreed to a safety plan and to clean her home.

DSS received a report of sexual abuse of Brian on 25 May 2018. During the course of the investigation, Brian told social workers his mother's friend, Justin, had inappropriately touched his groin area, had anally raped him, and engaged in fellatio with him. Brian used the term "crotch" to describe his penis and bottom to describe his "anus." Brian told social workers he had informed his mother of the actions and stated she did not believe him.

Social workers interviewed Respondent-mother regarding Brian's allegations. Respondent-mother indicated Brian had accessed pornography on his electronic devices, and the details he described could be based upon materials he had observed on his phone. Respondent-mother acknowledged Justin had stayed over nights in the shed with the family and that on occasion he spent the night in the bed with the boys and herself. She denied Brian had ever told her of Justin's actions.

Timothy and Lydia were also interviewed by social workers. Both reported the poor sanitation of the shed and acknowledged Justin spent time in the home and occasionally spent the night in the shed with the family.

Clinical social worker, Sara Ellis, interviewed both Brian and Lydia on 30 May 2018 at the Children's Advocacy Center ("CAC") in Jacksonville. At the time of the interview, Brian was eleven and a half years old and Lydia was seven and a half years old. Ellis videotaped the interview while other social workers watched and listened via live stream in another room. Brian repeated that Justin had raped him and sexually assaulted him and used the same terminology during his 25 May 2018 interview with DSS. Lydia asserted Justin had inappropriately touched her on two occasions, one of which occurred while they were sleeping on the bed with Respondent-mother.

DSS filed its petition alleging Brian was abused and that all three children were neglected on 31 May 2018. The children were removed from Respondent-mother's care on that same date. Petitions were served on the putative fathers of the children. The putative fathers did not participate in the adjudication and disposition hearing. Their cases are not before us.

Orders were entered continuing the juveniles in nonsecure custody with DSS for approximately five months. During this time, Respondent-mother entered into a case plan with DSS. Respondent-mother made progress and completed parenting classes, a psychological evaluation and began outpatient therapy. Respondent-mother and the children engaged in bi-weekly appropriate visitation. Respondent-

mother obtained a suitable and clean three-bedroom home with the assistance of her parents.

Following removal from their home, the children were placed into foster care. Brian was placed in a therapeutic foster home and Timothy and Lydia were placed together in a foster home. All three children received mental health services from a licensed professional counselor, Elbert Owens.

DSS filed a "Notification and Motion to Introduce Hearsay" on 7 September 2018. DSS sought to introduce hearsay statements of Brian and Lydia at the adjudication hearing pursuant to N.C. Gen. Stat. § 8C-1, Rules 803(24) and 804(b)(5). Copies of the DVDs and statements produced from the children's interviews at the CAC had been provided to Respondent-mother's counsel on 14 June 2018 and 27 July 2018.

DSS' motion was heard at a pre-adjudication trial hearing, combined with the hearing on the need for continued nonsecure custody. The trial court orally ruled the children would be unavailable to testify at the adjudication hearing, but failed to reduce the order to writing.

On 12 December 2018, Respondent-mother's counsel subpoenaed the children to testify at adjudication. The trial court orally granted DSS' and the guardian *ad litem's* ("GAL") motion to quash these subpoenas prior to the adjudication hearing.

The adjudication hearing was held on 14 and 15 January 2019. Sara Ellis, who had interviewed Brian and Lydia, testified regarding the protocols used to conduct interviews at the CAC, as well as her training. Respondent-mother objected on hearsay grounds to Ellis' hearsay testimony and the admission of the video of Brian's statement. After *voir dire* by counsel as well as questions from the bench, the trial court allowed the CAC video interview of Brian to be admitted into evidence. After similar objections and *voir dire* of Ellis, the CAC video interview of Lydia was also admitted into evidence.

The almost two-and-a-half-hour video of Brian's CAC interview was played for the courtroom. Brian described the rapes as occurring on the bed in the shed and on a bunkbed in a travel trailer near the shed where the family accesses running water. Brian gave details of being forced onto his chest, being tied up and Justin putting his "crotch" in Brian's "bottom" and it "really hurt."

Brian described Justin putting his mouth on his "crotch." Brian defined "crotch" as where he urinated. Brian provided details of what he was wearing, of what he saw, felt, and tasted. Brian stutters and when he described Justin's attacks his stuttering increased. The video interview of Lydia was also played in the courtroom. Lydia told Ellis that Justin had touched her private area on several occasions.

DSS called Justin, the alleged perpetrator of the sexual abuse of Brian and Lydia, as a witness. Justin denied molesting or sexually assaulting any of Respondent-mother's children. Justin acknowledged occasionally staying overnight in Respondent-mother's shed and spending time with her children. He admitted sleeping in a bed with Respondent-mother and one of the children. He indicated Respondent-mother would sleep in between himself and the child. Justin was interviewed by DSS and an Onslow County sheriff's detective. No criminal indictments were issued against him for any of the allegations.

DSS called Respondent-mother as a witness. She denied that Brian had told her about being sexually assaulted by Justin. She hesitated on whether she believed Brian's and Lydia's allegations. Respondent-mother testified that her brain condition impacts her memory. The children's former social worker, Noemi Rivera, testified to the conditions of the shed and Brian's reaction when she was at his home. Over Respondent-mother's hearsay objection, the trial court allowed Rivera to testify to statements Brian made in front of her on 25 May 2018 about Justin as an excited utterance.

The children's grandmother, Respondent-mother's mother, testified on her daughter's behalf. She showed photographs of Respondent-mother's new home and its clean condition. She testified she had never observed any inappropriate contact between Justin and her grandchildren. She stated there was a "strong possibility"

that Brian could have been assaulted. She also testified Lydia swam in her swimming pool with Justin in 2016.

The court adjudicated Brian and Lydia as abused and all three children to be neglected juveniles and continued the case for a hearing on disposition. The disposition hearing was held 12 February 2019. The court ordered placement authority to remain with DSS and that the children could be placed with their great-aunt in Texas. The court's written order was filed 13 June 2019 and Respondent-mother timely appealed.

## II. Jurisdiction

Jurisdiction lies in this Court pursuant to N.C. Gen. Stat. § 7B-1001(a)(5) (2019).

## III. Issues

Respondent-mother argues the trial court erroneously adjudicated Lydia to be an abused juvenile. She also asserts the trial court erred in admitting hearsay statements of Brian and Lydia.

## IV. No Allegation of Abuse

DSS failed to allege any factual allegations of abuse regarding Lydia. Notwithstanding the lack of allegations, the trial court found Lydia to be an abused juvenile. "A trial court's subject matter jurisdiction over all stages of a juvenile case is established when the action is initiated with the filing of a properly verified

petition." *In re T.R.P.*, 360 N.C. 588, 593, 636 S.E.2d 787, 792 (2006). A respondent must be put on notice as to the allegations against her. *In re Hardesty*, 150 N.C. App. 380, 384, 563 S.E.2d 79, 82 (2002).

The petition here only put Respondent-mother on notice as to allegations of neglect regarding Lydia. DSS and the GAL concede that the trial court erred by concluding Lydia was an abused juvenile. The portion of the trial court's order finding Lydia is an abused juvenile is vacated.

## V. Residual Hearsay Exceptions

Respondent-mother asserts the trial court's finding the children were unavailable to appear and testify under Rule 804(b)(5) incorporates purported findings of fact from an unwritten determination from the 8 November 2018 hearing. Respondent-mother further contends no competent record evidence supports the necessity to admit the juveniles' hearsay statements under Rule 803(24). She argues competent evidence does not exist to support the trial court's adjudication of her children as neglected or abused. DSS filed a motion to supplement the record on appeal and for this Court to order the court stenographer to transcribe the pre-trial hearing. That motion was denied.

## A. Standard of Review

"The admission of evidence pursuant to the residual exception to hearsay is reviewed for an abuse of discretion, and may be disturbed on appeal only where an

abuse of such discretion is clearly shown. The appellant must show that [he or she] was prejudiced and a different result would have likely ensued had the error not occurred." *In re W.H.*, 261 N.C. App. 24, 27, 819 S.E.2d 617, 620 (2018) (alteration in original) (internal quotation marks and citation omitted).

## B. Analysis

DSS sought introduction of the hearsay statements and video under both residual hearsay exceptions, Rules 803(24) (declarant's availability immaterial) and 804(b)(5) (declarant unavailable). Hearsay may be admissible under these residual exceptions where the statement is:

> not specifically covered by any of the foregoing exceptions but having equivalent circumstantial guarantees of trustworthiness, if the court determines that (A) the statement is offered as evidence of a material fact; (B) the statement is more probative on the point for which it is offered than any other evidence which the proponent can procure through reasonable efforts; and (C) the general purposes of these rules and the interests of justice will best be served by admission of the statement into evidence. However, a statement may not be admitted under this exception unless the proponent of it gives written notice stating his intention to offer the statement and the particulars of it, including the name and address of the declarant, to the adverse party sufficiently in advance of offering the statement to provide the adverse party with a fair opportunity to prepare to meet the statement.

N.C. Gen. Stat. § 8C-1, Rules 803(24), 804(b)(5) (2019). The statute requires the trial court to make findings of fact of (A), (B) and (C) stated above and for the proponent to provide the mandated prior notice to the adverse party. *Id.*

Our Supreme Court has interpreted both residual exceptions to require the trial court to conduct a six-part inquiry and determine whether: (1) proper notice has been given; (2) the hearsay statement is not specifically covered elsewhere; (3) the statement possesses circumstantial guarantees of trustworthiness; (4) the statement is material; (5) the statement is more probative than any other evidence which the proponent can procure through reasonable efforts; and, (6) the interest of justice will be best served by admission. *State v. Smith*, 315 N.C. 76, 92-96, 337 S.E.2d 833, 844-46 (1985) (holding the trial court must engage in this six-part inquiry in determining whether to admit proffered hearsay evidence under Rule 803(24)); *State v. Triplett*, 316 N.C. 1, 8, 340 S.E.2d 736, 741 (1986) (holding the trial court must proceed with the same six-part inquiry prescribed by *State v. Smith* in determining whether hearsay testimony may be admitted under Rule 804(b)(5)).

Respondent-mother's assertions on appeal challenge the purported incorporated findings based upon Owens' testimony and the children's unavailability. She contends any finding in the Adjudication Order supported by Owens' testimony on 18 November 2018 is erroneous and unsupported by competent evidence.

1. *Rule 804(b)(5)*

It is undisputed the trial court must make findings of fact and conclusions of law on the record when determining the admissibility of a hearsay statement. *State v. Valentine,* 357 N.C. 512, 518, 591 S.E.2d 846, 853 (2003) (citations omitted).

Our Supreme Court has held:

> admitting evidence under the catchall hearsay exception
> . . . is error when the trial court fails to make adequate
> findings of fact and conclusions of law sufficient to allow a
> reviewing court to determine whether the trial court
> abused its discretion in making its ruling. If the trial court
> either fails to make findings or makes erroneous findings,
> we review the record in its entirety to determine whether
> that record supports the trial court's conclusion concerning
> the admissibility of a statement under a residual hearsay
> exception.

*State v. Sargeant*, 365 N.C. 58, 65, 707 S.E.2d 192, 196 (2011) (citation omitted).

In relevant part, the trial court found:

> n. . . . At a hearing on the need for continued nonsecure
> custody and adjudication pre-trial conducted on November
> 8th, 2018, the Judge heard evidence in the form of
> testimony of the juvenile's therapist, Elbert Owens. That
> hearing pertained to Rule 804 (b) (5), whether the juveniles
> would be declared unavailable for testimony, as
> [Respondent-mother's counsel] indicated that he would
> subpoena on behalf of the respondent mother the juveniles
> for testimony at the adjudication of this matter. On that
> date the Court made specific findings of fact as to why the
> juveniles were unavailable to testify at the adjudication of
> this matter. The Court adopts each findings of fact as noted
> in that Order from the November 8th, 2018 court date and
> incorporates them into this finding, for purposes of this
> adjudication order pursuant to Rule 804(b) (5) as follows.

The only written recording of the 8 November 2018 hearing is the form

nonsecure custody order, which fails to include any required findings about

determining the juveniles to be "unavailable." DSS and the GAL argue that findings

regarding unavailability from the 8 November 2018 hearing are not invalid and were memorialized later in the court's Adjudication Order.

"The announcement of judgment in open court is the mere rendering of judgment, not the entry of judgment." *Draughon v. Harnett Cty. Bd. of Educ.,* 158 N.C. App. 208, 214, 580 S.E.2d 732, 737 (2003), *aff'd per curiam,* 358 N.C. 131, 591 S.E.2d 521 (2004). "[A] judgment is entered when it is reduced to writing, signed by the judge, and filed with the clerk of court." N.C. Gen. Stat. § 1A-1, Rule 58 (2019).

Here, while the parties may have been aware of the court's announcement of its decision that the children would be unavailable, precedent requires that the trial court enter sufficient findings of fact to support its conclusion of unavailability. *State v. Fowler*, 353 N.C. 599, 610, 548 S.E.2d 684, 693 (2001); *State v. Clonts*, 254 N.C. App. 95, 115, 802 S.E.2d 531, 545, *aff'd,* 371 N.C. 191, 813 S.E.2d 796 (2018).

"The degree of detail required in the finding of unavailability will depend on the circumstances of the particular case." *Triplett*, 316 N.C. at 8, 340 S.E.2d at 740. In *Triplett*, the declarant was deceased. Our Supreme Court held the trial court's determination of unavailability was properly "supported by a finding that the declarant [was] dead, which finding in turn [was] supported by evidence of death." *Id.*

The court's order indicates it relied upon the testimony of Owens to find the juveniles were unavailable. The order references Owens' testimony in its

determination that it "would be detrimental to the health and safety of the juveniles if the juveniles were compelled to testify regarding allegations of acts of sexual abuse perpetrated on them, by Justin [], and allowed to be perpetrated on them by the respondent mother." At the adjudication hearing, counsel for DSS simply states that at the 8 November 2018 hearing, Owens testified and the court ruled "the children would be unavailable to testify."

Owens' specific testimony is not set forth in the Adjudication Order. DSS argues the record on appeal submitted by Respondent-mother includes a file stamped letter from Owens. Owens' letter states "providing . . . testimony would likely re-traumatize the children." However, this letter is not a substitute for sworn testimony nor does it contain the findings required by our Supreme Court. It is impossible for this Court to determine whether the trial court's findings in its adjudication are supported by clear and convincing evidence.

The trial court's finding of fact that testifying would be detrimental to the health and safety of the juveniles is not supported by competent evidence and cannot support its conclusion that the juveniles were unavailable to testify in person at the adjudication hearing as to the sexual abuse they suffered. *Triplett*, 316 N.C. at 8, 340 S.E.2d at 740. In the absence of any physical evidence of abuse and a denial of any of the alleged acts by Justin, and Respondent-mother.

The prejudice to Respondent-mother is readily apparent. Respondent-mother is unable to present a defense to test the credibility of these statements and to ferret out or challenge the statements, any improper conduct, coaching, or other basis for these allegations.

2. *Rule 803(24)*

DSS' motion to introduce the hearsay statements asserted the statements were admissible under both Rules 803(24) and 804(b)(5). The only distinction between the rules is the finding of unavailability required for Rule 804(b)(5). *Triplett*, 316 N.C. at 8, 340 S.E.2d at 741.

Before allowing the residual hearsay at the adjudication, the trial court must "determine whether (1) proper notice has been given; (2) the hearsay statement is not specifically covered elsewhere; (3) the statement possesses circumstantial guarantees of trustworthiness; (4) the statement is material; (5) the statement is more probative than any other evidence which the proponent can procure through reasonable efforts; and (6) the interest of justice will be best served by admission." *In re W.H.*, 261 N.C. App. at 27, 819 S.E.2d at 620 (citing *Smith*, 315 N.C. at 92-96, 337 S.E.2d at 844-46).

In the present case, the trial court made purported findings regarding the hearsay within the CAC video interview of Brian. The trial court made nearly identical findings with respect to Lydia's statements in the CAC video.

Respondent-mother challenges the trial court's decision the statement is more probative than any other evidence which the proponent can procure through reasonable efforts.

> The availability of a witness to testify at trial is a crucial consideration under either residual hearsay exception. Although the availability of a witness is deemed immaterial for purposes of Rule 803(24), that factor enters into the analysis of admissibility under subsection (B) of that Rule which requires that the proffered statement be "more probative on the point for which it is offered than any other evidence which the proponent can procure through reasonable efforts." If the witness is available to testify at trial, the "necessity" of admitting his or her statements through the testimony of a "hearsay" witness very often is greatly diminished if not obviated altogether.

*State v. Fearing*, 315 N.C. 167, 171–72, 337 S.E.2d 551, 554 (1985) (citation omitted).

In the district court transcript, the parties referenced *In re M.A.E.*, 242 N.C. App. 312, __ S.E.2d __ (2015). In that case, the respondents challenged the trial court's conclusion that a female child sexual assault victim's statements were "more probative on the point for which they are offered than any other evidence which [DSS] can procure through reasonable efforts[.]" *Id.* at 318, __ S.E.2d at __. The respondents argued "the trial court failed to properly consider [the child's] availability to testify in person at the adjudicatory hearing." *Id.*

In *M.A.E.*, the trial court found it would be detrimental to the welfare of the juvenile to be compelled to come to court. *Id.* at 319, __ S.E.2d at __. The court found the child would "suffer from anxiety," "the courtroom setting itself would likely be

overwhelming . . . even in a closed-circuit situation," and causing the child to testify "could hamper" her progress in therapy. *Id.*, __ S.E.2d at __. There the trial court found "the proffered hearsay statements . . . were more probative on the point for which they [were] offered than any other evidence the proponent [could] procure through reasonable efforts due to the age, risk and bias of [the child]." *Id.*

Our Court reviewed the record and transcript and held the trial court's findings were consistent with the testimony of the child's therapist. *Id.* This Court recognized the therapist had testified that she was concerned the child would not be truthful "because she 'may feel guilt and maybe feel like she is getting someone in trouble and that she doesn't want anyone to be in trouble.'" *Id.*

Here, in relevant part, trial court found:

> iv. The statements of the juveniles to include the video taped recordings is more probative on the issue of sexual abuse than any other evidence which DSS could procure through reasonable efforts.
>
> This Court previously had a hearing on the availability of the testimony of the juveniles to provide testimony. This Court found as fact that it would be detrimental to the health and safety of the juveniles if the juveniles were compelled to testify regarding allegations of acts of sexual abuse perpetrated on them by Justin [] and allowed to be perpetrated on them by the respondent mother. This was based upon the testimony of the juveniles' therapist, Elbert Owens, as provided on November 8th , 2019 (sic).

Here, the trial court found it would be detrimental to the juveniles' health and safety for them to testify based upon unwritten findings of fact from a nonexistent

order. This same unsupported finding cannot support any finding that the hearsay statements of the juveniles in their recorded interviews at the CAC were more probative than any other evidence DSS could have obtained. This Court cannot evaluate whether the court's findings are consistent with the testimony of the children's therapist.

The best evidence DSS could procure of the children's allegations of abuse are from the children themselves. Respondent-mother had subpoenaed her children for adjudication, but these subpoenas were quashed by the trial court prior to trial. The trial court erred by adopting purported findings from the 8 November 2018 hearing. The recorded statements were inadmissible as an exception to the hearsay rule solely under Rule 803(24).

Where the court's findings and conclusions are not supported by other evidence, the admission of incompetent evidence is prejudicial. *See In re McMillon,* 143 N.C. App. 402, 411, 546 S.E.2d 169, 175 (holding the admission of incompetent evidence is not prejudicial where there is other competent evidence to support the district court's findings), *disc. review denied,* 354 N.C. 218, 554 S.E.2d 341 (2001). Respondent-mother was prevented from preparing and asserting a defense and has demonstrated prejudice exists. Without the inadmissible hearsay, no clear and convincing evidence supports the court's findings of abuse and neglect. The allegations against Respondent-mother based upon her allowed sexual assaults of

Brian have no other evidentiary support.

## VI. Conclusion

The trial court improperly concluded Lydia was an abused juvenile where no such allegation was asserted by DSS. That portion of the court's order is vacated.

The trial court's finding of fact that testifying would be detrimental to the health and safety of the juveniles is unsupported and is insufficient to support its conclusion that the juveniles were unavailable to testify in person at the adjudication hearing based upon the sexual abuse they allegedly suffered.

The CAC video was improperly admitted under both residual hearsay exceptions. Without the CAC video, no other evidence supports the trial court's determination that Brian was abused or that Brian, Timothy, or Lydia were neglected. The trial court's order is reversed and remanded. *It is so ordered.*

VACATED IN PART, REVERSED IN PART, AND REMANDED.

Judges MURPHY and HAMPSON concur.