IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA23-642

Filed 31 December 2024

Richmond County, Nos. 19 CRS 052201, 21 CRS 667, 22 CRS 720-21

STATE OF NORTH CAROLINA

v.

COREY ANTWAN WOMBLE, Defendant.

Appeal by Defendant from judgments entered 15 November 2022 by Judge Stephan R. Futrell in Richmond County Superior Court. Heard in the Court of Appeals 7 February 2024.

*Attorney General Joshua H. Stein, by Special Deputy Attorney General Carl Newman, for the State.*

*Appellate Defender Glenn Gerding, by Assistant Appellate Defender Brandon Mayes, for defendant-appellant.*

MURPHY, Judge.

The trial court did not abuse its discretion in admitting the victim's statement under the residual hearsay exception. Defendant's right to confrontation was not violated where the victim served as a witness for Defendant at trial and Defendant was not limited in his scope of questioning.

Defendant cannot show that the trial court committed plain error in admitting the witness Navy Stancil's out-of-court statement.

**BACKGROUND**

## A. At Trial

Defendant appeals from convictions of attempted first-degree murder, armed habitual felon, possession of a firearm by felon, and assault with a deadly weapon with intent to kill inflicting serious injury.

The record before us tends to show that, around 2:00 a.m. on 17 August 2019, Defendant and a group of friends visited a convenience store, where he encountered Victor Lindsey. At some point during this encounter, Defendant and Lindsey engaged in a verbal altercation. Sometime after this exchange, Lindsey entered his vehicle, where a woman was waiting in the passenger seat, and attempted to back out of his parking spot. Afterwards, Bobby Martin, a patron, and Navy Stancil, a cashier on duty, witnessed Defendant pull out a gun from behind his back, approach the driver's side of Lindsey's vehicle, and shoot Lindsey in the neck. Defendant then returned to his own vehicle and left the scene with a woman.

After Defendant left the scene, Martin approached Lindsey and attempted to slow his bleeding. Martin instructed Lindsey's passenger to assist until an ambulance arrived. Corporal Donovan Williams was the first law enforcement officer to respond to the scene, where he observed Lindsey and spoke to witnesses. Corporal Williams first interviewed Stancil, who told him what she witnessed and showed him a Facebook photo of Defendant, who she identified as the shooter. Corporal Williams also took statements from Martin and three other individuals before driving to the

hospital to speak to Lindsey. However, Lindsey did not provide a statement at that time.

On 7 June 2021, Defendant was indicted for one count of attempted first-degree murder in connection with the events on 17 August 2019. On 6 December 2021, Defendant was further indicted for one count of assault with a deadly weapon with intent to kill inflicting serious injury. On 10 October 2022, Defendant was indicted for one count of possession of a firearm by a convicted felon and one count of armed habitual felon.

On 13 October 2022, the trial court presided over a pretrial hearing in Defendant's case. During this hearing, the State submitted the following to the trial court:

> And for the Court's record and of note, I did want to express that there was some information that was brought to the District Attorney's Office in reference to this particular Defendant reaching out via a third party to our victim in the case by way of a potential bribe [of $10,000.00], and so the State is not going to proceed on that by way of an additional charge, but however, I would like for the Defendant to understand the seriousness of that and that he is set for trial [7 November 2022] and needs to have no contact with the witness either directly or through third parties.

Defendant responded that "he believe[d] that [the] third party acted on their own volition" and not "at his direction" and that he was "fully aware that he can't have direct contact . . . or request that a third party reach out to any of the victims or witnesses in this matter."

The State filed a motion in limine alleging that, on 26 October 2022, Stancil met with the State and notified the State that "[Defendant] contacted her approximately two weeks after the shooting on [17 August 2019] and asked her why she was going to snitch on him." During this meeting, "Stancil expressed concern for her safety[.]" The State also alleged that, on 2 November 2022, approximately one week before trial was scheduled to begin, Lindsey communicated to the State that Defendant had told Lindsey's family member that "he was going to shoot up [Lindsey's] house." After numerous unsuccessful attempts to reach him, the State reached Lindsey, who "said that he was done and that he wouldn't be coming into court" and that he was "doing it for his family." Lindsey's nephew confirmed to law enforcement officers that "[Defendant] came to his home and said[,] 'Tell your people if anyone testifies against me, I will shoot up their house[,]' while making a gun gesture with his hand." Law enforcement officers subsequently obtained a warrant for Defendant's arrest for intimidating a witness, but they were unable to serve it until Defendant was seen speaking with Lindsey in the courthouse on 7 November 2022. The State further alleged that, on 3 November 2022, law enforcement officers received a call from a woman who identified herself as the girlfriend of Ben Forbis, a potential witness for the State, who "indicated [Forbis] had been receiving threats from [Defendant] not to come to court and [that] she was afraid." On 3 November 2022, the State also received a call from Forbis, who "said that he wasn't coming to

court, he wasn't testifying, he was scared, [and] he didn't want to have anything to do with what was going on[.]"

On 7 November 2022, Womble filed an affidavit signed by Lindsey which stated, in pertinent part, as follows:

> 3. That I make this statement of my own free will, absent of any duress;
>
> 4. That on or about [17 August 2019], I was shot in the neck;
>
> 5. That on the aforementioned date, [Defendant] was not the individual who shot me.
>
> 6. That initially, I did not tell the police who the shooter was;
>
> 7. Then I subsequently did identity [Defendant] as the shooter;
>
> 8. [Defendant] was not in fact the shooter.

That same day, the State filed a motion in limine to declare Defendant's right to confront Lindsey, Stancil, and Forbis as "forfeited . . . by his pre-trial actions."

On 8 November 2022, the State filed additional motions in limine to preclude Defendant from entering evidence "showing . . . the possibility of another person's responsibility for the crimes . . . if that inquiry, evidence, or showing does not: (1) point directly to another person's guilt, and (2) contradict [Defendant's] guilt" and to admit recordings of hearsay statements made by Stancil and Lindsey into evidence pursuant to N.C.G.S. § 8C-1, Rules 803(24) and 804(b)(5).

On 8 November 2022, the trial court presided over a hearing on these motions. The trial court found that Defendant forfeited his right to confrontation of Lindsey and admitted the recording of Lindsey's statement to Chief George Gillenwater under 803(24) and 804(b)(5). The trial court further permitted the State to introduce evidence of Stancil's prior identification of Defendant as a present sense impression.

At the conclusion of trial, Defendant was convicted of attempted first-degree murder, assault with a deadly weapon with intent to kill inflicting serious injury, and possession of a firearm by felon and stipulated to the armed habitual felon offense. Defendant appealed.

**B. On Appeal**

On appeal, Defendant attempted to file multiple pro se motions while still represented by counsel. We dismissed these motions without prejudice due to Defendant still being represented. Additionally, Defendant's then-appellate counsel filed a motion to withdraw. We allowed this motion and remanded to the trial court for a determination as to whether Defendant was indigent and desired the Appellate Defender to be appointed. The Appellate Defender was appointed on 20 March 2024. However, on 4 June 2024, appellate counsel decided not to file any further motions after reviewing the pro se motions previously filed and moved to withdraw as appellate counsel upon Defendant's request. Despite being informed by appellate counsel that Defendant may not be entitled to appointed counsel for the remaining duration of the appeal if the motion was allowed, Defendant indicated a desire to

proceed with the motion to withdraw and to seek substituted appointed counsel, which appellate counsel opposes.

Here, we deny the motion to withdraw. It is worth noting that Defendant has no constitutional right to proceed pro se on appeal. *See Martinez v. Court of Appeal*, 528 U.S. 152, 161, 163 (2000) (stating that "the [Sixth] Amendment itself does not provide any basis for finding a right to self-representation on appeal [or a right to appeal]" and holding "that neither the holding nor the reasoning in *Faretta* requires California to recognize a constitutional right to self-representation on direct appeal from a criminal conviction[]"). Additionally, to the extent that there is an alternative motion for substitution of appointed counsel, we deny that motion as well. It is well established that there is no right to choice of appointed counsel. *See State v. Thacker*, 301 N.C. 348, 351–52 (1980) (citations and footnote omitted) ("[A]n indigent defendant does not have the right to have counsel *of his choice* appointed to represent him. This does not mean, however, that a defendant is never entitled to have new or substitute counsel appointed. A trial court is constitutionally required to appoint substitute counsel whenever representation by counsel originally appointed would amount to denial of [the] defendant's right to effective assistance of counsel, that is, when the initial appointment has not afforded [the] defendant his constitutional right to counsel."). We find no constitutional insufficiency in appellate counsel's conduct here, and substitution is not necessary. Although the motion to withdraw is made on the basis of a disagreement regarding what appellate counsel should file on appeal,

we note that there is no right to control the arguments of appellate counsel. *See Jones v. Barnes*, 463 U.S. 745, 751-54 (1983) ("Neither *Anders* nor any other decision of this Court suggests . . . that the indigent defendant has a constitutional right to compel appointed counsel to press nonfrivolous points requested by the client, if counsel, as a matter of professional judgment, decides not to present those points. . . . For judges to second-guess reasonable professional judgments and impose on appointed counsel a duty to raise every 'colorable' claim suggested by a client would disserve the very goal of vigorous and effective advocacy that underlies *Anders*.").

Relatedly, our caselaw regarding absolute impasse, established by *State v. Ali*, 329 N.C. 394 (1991), is inapplicable on appeal, and is properly restricted to representation by trial counsel. The absolute impasse rule is outlined in *Ali* as follows:

> Our Court of Appeals has held that tactical decisions, such as which witnesses to call, whether and how to conduct cross-examinations, what jurors to accept or strike, and what trial motions to make are ultimately the province of the lawyer. . . . However, when counsel and a fully informed criminal defendant client reach an absolute impasse as to such tactical decisions, the client's wishes must control; this rule is in accord with the principal-agent nature of the attorney-client relationship. In such situations, however, defense counsel should make a record of the circumstances, her advice to the defendant, the reasons for the advice, the defendant's decision and the conclusion reached.

*Id*. at 404 (citations and marks omitted). *Ali* was decided in the context of Sixth Amendment rights at the trial court level and should be limited to this setting. *Id.*

at 402–04 (discussing the right to counsel at multiple points, citing cases based on the Sixth Amendment, enunciating the absolute impasse rule in the context of an allegation that the right to counsel was violated, and ultimately holding "the defendant was not denied effective assistance of counsel"). We have not found any case which applies *Ali* in the context of appellate counsel. Additionally, limiting this rule to trial counsel is appropriate, as to apply it to appellate counsel would conflict with the Supreme Court's holding in *Jones v. Barnes*, which we are bound by. *See Johnston v. State,* 224 N.C. App. 282, 288 (2012) (citing *State v. Elliott,* 360 N.C. 400, 421 (2006)*,* and *In re Civil Penalty,* 324 N.C. 373 (1989)) ("In analyzing federal constitutional questions, we look to decisions of the United States Supreme Court[,] . . . [and] decisions of the North Carolina Supreme Court construing federal constitutional . . . provisions, and we are bound by those interpretations. We are also bound by prior decisions of this Court construing those provisions, which are not inconsistent with the holdings of the United States Supreme Court and the North Carolina Supreme Court.").

In summary, we find no constitutional violation in appellate counsel's refusal to submit arguments to us despite Defendant's express desire and see no reason to allow counsel to withdraw or appoint substitute appointed counsel.

Following the motion to withdraw, but prior to any ruling by our Court regarding it, Defendant filed multiple pro se motions, including *Exhibits to be Attached to Pro Se Motion Designated "Substitution of Appointed Appellant Counsel"*;

*Substitution of Appointed Appellate Counsel*; *Motion Asking to be Heard*; *Motion to Compel*; *Motion to Supplement Previously Filed Motion for Substitution of Appointed Appellate Counsel*; *Supplemental Motion*; *Motion for Appropriate Relief*; *Addendum of Law*; *Motion for Judicial Notice*; *Motion to Notify the Court*; *Motion to Take Judicial Notice*; and *Motion to Invoke Rule 2*.

These motions were filed improperly, as Defendant was represented by counsel at the time of their filing. *See State v. Williams*, 363 N.C. 689, 700 (2009) (citations and marks omitted) ("A defendant has only two choices—to appear *in propria persona* or, in the alternative, by counsel. There is no right to appear both *in propria persona* and by counsel. Having elected for representation by appointed defense counsel, [a] defendant cannot also file motions on his own behalf or attempt to represent himself. [A] [d]efendant has no right to appear both by himself and by counsel."). As a result, we dismiss these motions without prejudice as not properly before us.

## ANALYSIS

On appeal, Defendant asserts several evidentiary issues surrounding the admission of purported hearsay statements.

### A. Residual Hearsay Exception

Defendant first argues that the trial court erred in admitting the hearsay recording of Lindsey's statement to Chief Gillenwater under a residual hearsay exception.

- 10 -

> The admission of evidence pursuant to the residual exception to hearsay is reviewed for an abuse of discretion, and may be disturbed on appeal only where an abuse of such discretion is clearly shown. The appellant must show that he or she was prejudiced and a different result would have likely ensued had the error not occurred.

*In re W.H.*, 261 N.C. App. 24, 27 (2018) (cleaned up).

Here, the trial court granted the State's motion to admit the recording of Lindsey's statement to Chief Gillenwater pursuant to N.C.G.S. § 8C-1, Rule 803(24), the residual hearsay exception that applies if the declarant is available, and pursuant to N.C.G.S. § 8C-1, Rule 804(b)(5), the residual hearsay exception that applies if the declarant is unavailable. Assuming, *arguendo*, that we agree with Defendant's argument that the trial court erred in determining that Lindsey was unavailable as a witness, the requisite inquiry for its admission of the recorded statement remains the same under Rule 803(24):

> Rule 803(24) of the North Carolina Rules of Evidence is essentially identical to Rule 804(b)(5), but it does not require that the declarant be unavailable. Under either of the two residual exceptions to the hearsay rule, the trial court must determine the following: (1) whether proper notice has been given, (2) whether the hearsay is not specifically covered elsewhere, (3) whether the statement is trustworthy, (4) whether the statement is material, (5) whether the statement is more probative on the issue than any other evidence which the proponent can procure through reasonable efforts, and (6) whether the interests of justice will be best served by admission.

*State v. Valentine*, 357 N.C. 512, 517–18 (2003) (citations omitted). Thus, we review whether the trial court properly admitted Lindsey's statement pursuant to Rule 803(24).

Under the residual hearsay exception contained in Rule 803(24):

> The following are not excluded by the hearsay rule, even though the declarant is available as a witness:
>
> . . . .
>
> A statement not specifically covered by any of the foregoing exceptions but having equivalent circumstantial guarantees of trustworthiness, if the court determines that (A) the statement is offered as evidence of a material fact; (B) the statement is more probative on the point for which it is offered than any other evidence which the proponent can procure through reasonable efforts; and (C) the general purposes of these rules and the interests of justice will best be served by admission of the statement into evidence. However, a statement may not be admitted under this exception unless the proponent of it gives written notice stating his intention to offer the statement and the particulars of it, including the name and address of the declarant, to the adverse party sufficiently in advance of offering the statement to provide the adverse party with a fair opportunity to prepare to meet the statement.

N.C.G.S. § 8C-1, Rule 803(24) (2023).

The trial court determined the following in ruling on the State's motion to admit the recorded statement pursuant to Rules 803(24) and 804(b)(5):

> The [c]ourt finds that the . . . interview statement of the . . . alleged victim Victor [Lindsey] by now Chief Gillenwater is being offered first as evidence of the material fact; there's . . . two material facts, the identity of the person who shot him, and what happened.

> Secondly, the statement is more probative on that point for which it's offered than any other evidence, which the State, being the proponent, can procure through reasonable efforts, and the general purpose of the rules in the interest of justice would be best served by the admission of the statement into evidence. The [c]ourt finds the State gave written notice of its intention to offer the statement as soon as it . . . was aware of the circumstances of the witnesses changing or saying something different from what he had previously said.

> Also, the Defendant has an opportunity in advance to prepare to respond to the introduction of that evidence and the [c]ourt incorporates, by reference, its previous findings in relation to the unavailability of that witness.

Defendant does not challenge these findings of fact on appeal and argues only that, "regardless of whether the trial court's finding was based upon [Rule 803(24) or Rule 804(b)(5)], the ruling was in error because there were no findings whatsoever regarding the circumstantial guarantees of trustworthiness of the statements sought to be admitted."

"The trial court is required to make findings of fact and conclusions of law when determining the trustworthiness of a hearsay statement." *Valentine*, 357 N.C. at 518. In *Valentine*, "[t]he State concede[d] that the trial court erroneously failed to make the required findings of fact and conclusions of law[,]" and, "[b]ecause the trial court failed to determine whether the victim's statements . . . contained equivalent circumstantial guarantees of trustworthiness necessary for admission under the exceptions to the hearsay rule," our Supreme Court "review[ed] the record and [made] [its] own determination." *Id.* (marks omitted). Here, too, we review whether

Lindsey's statement to Chief Gillenwater contains the equivalent circumstantial guarantees of trustworthiness necessary for admission.

> When determining the trustworthiness, the following considerations are at issue: (1) whether the declarant had personal knowledge of the underlying events, (2) whether the declarant is motivated to speak the truth or otherwise, (3) whether the declarant has ever recanted the statement, and (4) whether the declarant is available at trial for meaningful cross-examination.

*Id.* "We note that any recantation of testimony is a factor. However, our Supreme Court has also instructed that none of these four factors, alone or in combination, may conclusively establish or discount the statement's circumstantial guarantees of trustworthiness." *In re W.H.*, 261 N.C. App. at 28 (cleaned up).

Lindsey initially stated to Chief Gillenwater in April 2021 that Defendant had shot him. As the victim of a crime, Lindsey was reasonably motivated to speak the truth and had personal knowledge of the incident. Although Lindsey recanted the statement later on 7 November 2022, he did so only after he made the State aware that Defendant had begun threatening Lindsey and his family. Furthermore, Lindsey was available at trial to be questioned by Defendant about the statement, as Lindsey served as a witness for Defendant.

Defendant also challenges the admission of Lindsey's hearsay statement on Confrontation Clause grounds. This argument fails, as Lindsey served as a witness for Defendant, and the trial court placed no limitations upon what Defendant could ask of him.

## B. Present Sense Impression

Defendant next argues that the trial court erred in admitting Stancil's out-of-court statement as a present sense impression because it was not made sufficiently close in time to the event.  Defendant also argues that the admission of Stancil's out-of-court statement violated his constitutional right to confrontation.  However, the trial court admitted the State's Exhibit 5, Corporal Williams's bodycam footage, without objection at the time it was offered.  Defendant therefore failed to preserve these issues for our review:

> Generally speaking, the appellate courts of this state will not review a trial court's decision to admit evidence unless there has been a timely objection.  To be timely, an objection to the admission of evidence must be made at the time it is actually introduced at trial.  It is insufficient to object only to the presenting party's forecast of the evidence.  As such, in order to preserve for appellate review a trial court's decision to admit testimony, objections to that testimony must be contemporaneous with the time such testimony is offered into evidence and not made only during a hearing out of the jury's presence prior to the actual introduction of the testimony.
>
> In the case *sub judice* [the] defendant objected to the admission of evidence regarding his 1990 assaultive behavior only during a hearing out of the jury's presence. In other words, [the] defendant objected to the State's forecast of the evidence, but did not then subsequently object when the evidence was actually introduced at trial. Thus, [the] defendant failed to preserve for appellate review the trial court's decision to admit evidence regarding his 1990 assaultive behavior.

*State v. Ray*, 364 N.C. 272, 277 (2010) (citations and marks omitted).

However, Defendant argues on appeal that the trial court's admission of Stancil's statement amounted to plain error. *See State v. Miller*, 371 N.C. 266, 268 (2018) (allowing plain error review for challenges to jury instructions and evidentiary issues); *see also* N.C. R. App. P. 10(a)(4) (2023) (allowing review of unpreserved issues "when the judicial action questioned is specifically and distinctly contended to amount to plain error"). To demonstrate plain error, Defendant must show that,

> absent the error, the jury *probably would have* returned a different verdict. This wording is important because this standard—showing that a jury *probably would have* reached a different result—requires a showing that the outcome is significantly more likely than not. In ordinary English usage, an event will "probably" occur if it is "almost certainly" the expected outcome; it is treated as synonymous with words such as "presumably" and "doubtless."

*State v. Reber*, 386 N.C. 153, 159 (2024) (citation omitted) (emphasis in original). "In other words, the test examines the state of all the evidence except for the challenged evidence and asks whether, in light of that remaining evidence, the jury probably would have done something different." *Id.* at 162.

Even assuming, *arguendo*, that it was error for the trial court to admit Stancil's statement, and, therefore, disregarding the challenged statement, the remaining evidence was sufficient to support the jury verdict. Even if it is "*possible* that the jury would have acquitted [Defendant,]" Defendant "has not shown that the jury *probably* would have done so." *Id.* (emphasis in original).

At trial, Defendant testified that he "had words with the victim in this case[]" inside of the convenience store. Martin testified that he witnessed two individuals "having some words" inside of the convenience store. Martin testified that, after the two individuals arguing inside of the store came outside of the store, one returned to his vehicle, while "[t]he one with the gun . . . looked dead at [him] . . . and he just pulled the gun out his back, cocked it, shell hits the floor. He walks over and sticks it in the car." Martin testified that he was looking at the shooter when he pulled the gun and was able to recognize him as "the same person that was arguing in the store." The State presented a photograph of Stancil showing Corporal Williams a picture of Defendant, and Corporal Williams testified that he "was able to get a Facebook photo of who [Stancil] said was the shooter." Furthermore, Defendant's testimony about approaching Lindsey's car is contradicted by video surveillance footage introduced at trial. Viewing the remaining evidence, Defendant "failed to satisfy the exacting standard to show plain error[.]" *Id.* at 163.

## CONCLUSION

The trial court did not abuse its discretion in admitting Lindsey's out-of-court statement to Chief Gillenwater under the residual hearsay exception. Even assuming, *arguendo*, that the trial court erred in admitting Stancil's out-of-court statement to Corporal Williams, Defendant cannot show that, disregarding this evidence, the jury probably would have reached a different result.

NO ERROR IN PART; NO PLAIN ERROR IN PART.

Judges ARROWOOD and HAMPSON concur.